Eliza McLaflin *et al.*

*v.*

Malden Jones *et al.*

*Filed at Springfield April 2, 1895.*

1. Banks—*paying certificate regularly indorsed are protected.* A bank to which a certificate of deposit issued by it is presented for payment, properly indorsed by the payee, in the regular course of business, is bound to pay the money, and is not liable because such money constitutes a part of a trust fund which is subsequently misappropriated by the trustee.

2. Laches—*delay of thirteen years to claim trust moneys transferred by trustee.* Beneficiaries of a trust, who delay for thirteen years, after knowledge of a misappropriation of the funds by the trustee, to proceed against the persons receiving such funds, are guilty of such *laches* as to deprive them of the right to follow up the funds, where the trust is not express, but arises by implication of law.

*McLaflin* v. *Jones*, 55 Ill. App. 518, affirmed.

Writ of Error to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Douglas county; the Hon. Edward P. Vail, Judge, presiding.

Horace S. Clark, for plaintiffs in error.

E. L. Walker, and Eckhart & Moore, for defendants in error.

Mr. Justice Craig delivered the opinion of the court:

This was a bill in equity, brought by Eliza McLaflin and certain other persons, as heirs-at-law of Luther C. Rust, deceased. The purpose of the bill, as we understand the allegations, was to follow a certain alleged trust fund into the hands of J. C. Justice, the First National Bank of Arcola, Daniel W. Jones, Malden Jones and Moses Kauffman, the principal of which amounted to the sum of $2849.52.

It appears from the record that one Eli Wood died testate in 1862, leaving Eliza Wood, (now McLaflin,) his

widow, and seven children.    Allen Campbell was named
as executor in the will, and under a decree of court the
property belonging to the estate was sold by the execu-
tor, and, after the payment of costs and expenses, two-
thirds of the remaining proceeds was paid over to the
seven children and heirs of the deceased.    The remain-
ing one-third, $2849.52, was, under the decree, retained
by the executor, and he was directed to loan it out, and
pay the interest, annually, to the widow during her life.
The executor, Campbell, died October 13, 1875, and Caleb
Bales was appointed his administrator on December 21,
1875, by the county court of Douglas county.    At the
time of the death of Campbell he held a certain certifi-
cate of deposit, in the words and figures following, to-wit:

"No. 465.                            Interest $100.

"Banking House of J. C. Justice,

Arcola, Ill., *Jan. 22, 1875.*

"Allen Campbell has deposited in this bank one thou-
sand and no /100 dollars, payable in United States or
national bank notes, payable to the order of himself
twelve months after date, with ten per cent interest per
annum, in current funds, on the return of this certificate
properly endorsed.            J. Cicero Justice."

    $1,000, 00/100.

Upon which certificate is the following endorsement:

"Pay to the order of Alvin Jones.    C. Bales,

*Admr. of estate of Allen Campbell,*

"January 20, 1876.                  Alvin Jones."

Campbell, at the time of his death, also held in his
possession two notes, one against Kauffman, for the sum
of $600, and a note for the sum of $1240, payable to
Campbell, and signed by Daniel W. Jones as principal,
and Malden Jones as security.    These three instruments
passed into the hands of Caleb Bales, as administrator
of the estate of Allen Campbell, deceased.    On the third
day of January, 1876, Eliza McLaflin executed and deliv-

ered to Alvin Jones a power of attorney to collect all notes and indebtedness to her accruing or to accrue, and especially her interest in the estate of Eli Wood, deceased; to collect for her moneys to her accrued or to accrue; to receive notes and papers, and to receipt for the same to the proper parties. Under this power of attorney Alvin Jones called upon Caleb Bales, administrator of the estate of Allen Campbell, deceased, and the latter indorsed and assigned to him the certificate of deposit and the two notes. The two notes were subsequently paid to Alvin Jones. The $1240 note against Jones was paid as follows: Alvin Jones was indebted to Malden Jones in the sum of $965.65. This amount was credited on the note, and the balance was paid by a check on the First National Bank of Arcola. The Kauffman note was left at the bank by Alvin Jones, with other notes he held, and Kauffman paid the note at the bank. As to the certificate of deposit, it was presented by Alvin Jones to the banking house of J. C. Justice for payment, and paid in the regular course of business. From 1876, the time the money in question passed into the hands of Alvin Jones, until 1883, he paid the complainant Eliza McLaflin, regularly, the interest on $2849.52,—the amount of the notes and certificate of deposit. After 1883 no payments were made, and no steps seem to have been taken to collect interest or principal of the fund from Alvin Jones or any other person until this bill was filed, on the 20th day of March, 1890.

The theory of the bill is, that this $2849.52 was a trust fund, and that the defendants received the money with a knowledge of its trust character. But the defendants, in their answers, expressly denied that they had any knowledge of the character of the fund.

As respects the defendant J. C. Justice, the certificate of deposit was issued to Allen Campbell, not as trustee or executor, but to him in his individual capacity. It was transferred, by indorsement, to Alvin Jones by

C. Bales, administrator of the estate of Allen Campbell, and, thus indorsed, was presented to the banking house of J. C. Justice for payment. So far as the face of the certificate of deposit or the indorsement was concerned, nothing appeared which, in the slightest degree, tended to show that the money belonged to an estate or was trust funds, and no evidence was introduced to establish that fact. Here was a certificate of deposit, properly indorsed by the payee, presented to a bank for payment in the regular course of business. The bank was bound to pay the money. It had no business to stop and inquire how or in what manner the assignee obtained the certificate. It was enough that it was legally indorsed over to him by the payee or the legal representative of the payee, and where a bank pays under such circumstances it is entitled to be protected. The fact that Jones subsequently appropriated the money to his own use, or squandered it, could not render Justice liable.

As has been seen, $965.65 of the note against Malden Jones was not paid in money, but Alvin Jones owed Malden that sum on another transaction, and paid the amount by giving Malden credit on the note held against him. It appears from the record that in the fall of 1876 the note against Malden Jones, with the credit upon it, the note against Kauffman, and some other notes payable to Alvin Jones, were left by him for collection with the First National Bank of Arcola. During the following winter the notes were paid and the money placed to the credit of Alvin Jones in the bank. In the spring following, Alvin Jones called at the bank, and from the proceeds of the money so collected paid a note or notes which the bank held against him and took up the notes, and it is insisted that Malden Jones, who obtained the credit on his note, and the First National Bank, knew that the money held by Alvin Jones was trust funds, and that he had no right to apply the same in payment

of his own debts, and having received trust funds with notice, they are liable to account.

In *Fifth Nat. Bank* v. *Village of Hyde Park*, 101 Ill. 595, after citing and considering the authorities, it was held, that "to charge a stranger to a trust fund as a trustee, by reason of participation in a misapplication of the fund, upon the ground that the fund was used in payment of a private debt of the original trustee, it is necessary to show, not only that the party sought to be charged was aware that the fund was a trust fund," but also that he was, at the time, aware that the debt paid by it was in fact a private debt, or such a debt that payment could not lawfully be made out of such fund. It is there, among other things, said: "The teaching of all the authorities is consonant with the proposition that to charge a stranger as a party to the misappropriation of the trust fund, such stranger must knowingly partake in the breach of trust, —that he must know or have proof of facts which, in law, characterize the transaction as a breach of trust."

In the answers of the defendants under oath they deny all knowledge that the funds held by Alvin Jones were trust funds. There is some evidence in the record that the bank, Malden Jones and Kauffman knew that the property which came into the hands of Alvin Jones belonged to the estate of Eli Wood, deceased; but whether the evidence on this branch of the case is sufficient to authorize a decree we shall not stop to determine, as the decision will be placed on other grounds.

Upon looking into the evidence it will be found that the alleged misappropriation was made by Alvin Jones as early as April 1, 1877, and yet this suit was not brought until March 20, 1890. Here a period of thirteen years intervened after the money was appropriated, and no effort made to collect, when, at the same time, it was shown by the evidence that the heirs of Eli Wood had actual knowledge of the condition of the fund and the action of Alvin Jones as early as 1877. The *laches* of

complainants is set up and relied upon as a defense in the answers, and unless there is something in this case to take it out of the operation of the general rule, it is plain that the long delay of the complainants in asserting their rights in court is a bar to the relief claimed in the bill. It is, however, claimed, in answer to this position, that the transaction was a trust, and the Statute of Limitations or *laches* cannot be interposed as a ground of defense. The Appellate Court, in disposing of this question, speaking through Mr. Justice WALL, said : "It is not an express trust, but if a trust, it is so merely by implication of law, and in such cases we understand the rule to be that *laches* will bar relief. (Wood on Limitations, sec. 215 ; Angell on Limitations, sec. 166 ; *School Directors* v. *School Directors*, 16 Bradw. 651.) While authorities may be found which seem to sustain the view that this defense cannot be made in such cases, yet we think they overlook the well established distinction, above stated, between express and implied trusts." We concur in the view of the Appellate Court on this question.

But it is said in the argument that J. Reynolds Rust, one of the complainants, was a minor, and *laches* cannot be imputed to him. The allegation in the bill is that Alfred C. Rust is a minor. The bill was brought by the widow and two of the daughters of Eli Wood, deceased, and by the heirs of Luther C. Rust, deceased. It was alleged in the bill that "Maria C. Ferguson sold and transferred to one Luther C. Rust, since deceased, an interest in said estate, the exact nature of which is uncertain to your orators and oratrix, the extent of which they submitted to the judgment of the court herein; and your orators and oratrix further represent, that since the distribution of the said two-thirds the said Luther Rust has departed this life intestate, at, etc., leaving surviving him, Emily N. Rust, his widow and, etc., Cora H. Brown, H. R. Vradenburg, Rena N. Rust, W. R. Rust, Edward D. Rust and J. Reynolds Rust and H. R. Armstrong, his

daughters, and Alfred C. Rust, the last named being now a minor, his only heirs and legal representatives." We find no evidence in the record in regard to the age of Alfred C. Rust, alleged in the bill to be a minor. Nor does the evidence disclose what title or interest the heirs of Luther C. Rust have in the fund in question. Under such circumstances we perceive no ground upon which they can claim that the limitation laws should not be invoked against them as well as the other complainants.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*